ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **JOHANNA DALÍ CABIYA RODRÍGUEZ y KING RICHARD RODRÍGUEZ VILLEGAS**<br><br>Recurrido<br><br>v.<br><br>**SHERATON PUERTO RICO MANAGEMENT, LLC. h/n/c THE ST. REGIS BAHÍA BEACH RESORT, PUERTO RICO**<br><br>Peticionario | KLCE202400707 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.: **BY2021CV00863**<br><br>Sobre: Despido injustificado (Ley Núm. 80) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de diciembre de 2024.

Comparece ante nos, Sheraton Puerto Rico Management LLC h/n/c The St. Regis Bahía Beach Resort Puerto Rico (St. Regis) y solicita que revoquemos la *Resolución* que emitió el Tribunal de Primera Instancia (TPI), Sala de Bayamón, el 22 de abril de 2024. Mediante la misma, el TPI declaró *No Ha Lugar* la *Moción en Solicitud de Sentencia Sumaria* presentada por St. Regis y ordenó la continuación de los procedimientos.

**I.**

Surge del expediente que el 3 de marzo de 2021, la señora Johanna Dalí Cabiya Rodríguez y su esposo, el señor King Richard Rodríguez Villegas (demandantes o recurridos), presentaron una *Demanda* contra St. Regis, sobre despido discriminatorio e injustificado, al amparo de las siguientes leyes: Ley Núm. 80 de 30 de mayo de 1976, según enmendada, (Ley Núm. 80), *Ley Sobre Despidos Injustificados,* 29 LPRA sec. 185a *et seq.*; Ley Núm. 100 de

30 de junio de 1959 (Ley Núm. 100), *Ley Antidiscrimen de Puerto Rico*, 29 LPRA sec. 146 *et seq.*; Ley Núm. 3 del 13 de marzo de 1942 (Ley Núm. 3), *Ley de Protección de Madres Obreras*, 29 LPRA sec. 467 *et seq.* y la Ley Núm. 69 de 6 de julio de 1985 (Ley Núm. 69), *Ley para Garantizar la Igualdad de Derecho al Empleo*, 29 LPRA sec. 1321 *et seq.* Asimismo, incoaron una causa de acción de daños y perjuicios al palio de los Artículos 1802 y 1803 del Código Civil de 1930, 31 LPRA secs. 5141 y 5142.[1]

Entre sus alegaciones, la señora Cabiya Rodríguez arguyó que trabajó para Sheraton PR Management, desde el 7 de febrero de 2008, comenzando en el Hotel Ritz Carlton, en varias posiciones tales como agente de *Front Desk*, coordinadora de cuartos *Matrix*, *Front of The House Supervisor* y *Gerente de Housekeeping*, hasta que cerró operaciones luego del paso del huracán María por la isla. Expuso que, posteriormente, laboró en varios hoteles pertenecientes a la cadena Marriot en la costa este de los Estados Unidos[2] y finalmente, en octubre de 2018, fue trasladada al hotel The St. Regis Bahía Beach Resort, como *Housekeeping Manager*. Manifestó que mientras laboraba para la cadena Marriot, fue reconocida por su labor como empleada, aumentando su salario a través de los 12 años de servicio que brindó y que nunca fue amonestada ni por escrito, ni verbalmente en el tiempo que estuvo laborando para los hoteles. Añadió que la cadena Marriot le garantizó su antigüedad mientras fue trasladada a las distintas hospederías mencionadas. Expresó

---

[1] Vigente al momento que surgieron las causas de acción reclamadas por el codemandante King Richard Rodríguez Villegas.

[2] Tras el paso del huracán María, el Ritz Carlton (hotel en el que trabajaba al momento de los hechos ocurridos por el huracán), cesó operaciones y esta fue trasladada como task force a los siguientes hoteles de la cadena Marriot en los Estados Unidos:
- The Ritz Carlton Buckhead, Atlanta: Trabajó dos meses encargada de ayudar en la transición de nombres en el área del Front Desk.
- The Ritz Carlton Bacara, California: Trabajó tres meses encargada de establecer protocolos de servicios durante su reapertura en Front Desk.
- W Hotel South Beach, Miami: Trabajó siete meses encargada del personal de housekeeping del PM.
- The Ritz Carlton Bal Harbour, Miami: Trabajó tres semanas cubriendo al director de Housekeeping.

que el 15 de julio de 2020, St. Regis le comunicó a la señora Cabiya Rodríguez, mediante una carta suscrita por el Director de Recursos Humanos, el señor Owen Woollis, la terminación de su empleo, efectiva al 13 de septiembre de 2020. Como justificación para ello, St. Regis explicó que se estaba eliminando el puesto que ostentaba la señora Cabiya Rodríguez, como consecuencia de los estragos que causó el COVID-19 en la industria turística y hotelera, además de la disminución de la ocupación del hotel. En la carta de notificación de terminación de empleo, St. Regis destacó que la señora Cabiya Rodríguez no contaba con ˝bumping rights˝, es decir, que no tenía derecho a solicitar otra posición dentro del hotel. A la fecha de su despido, alegadamente injustificado y discriminatorio, la señora Cabiya Rodríguez se encontraba en estado de gestación, al igual que cuatro empleadas que también fueron despedidas. Por ello, suplicó al foro primario que determinara que los actos u omisiones de St. Regis fueron en violación a las siguientes leyes: Ley Núm. 69, Ley Núm. 3, Ley Núm. 80 y la Ley Núm. 100. Además, solicitó se le indemnizara por los daños emocionales sufridos como consecuencia de su despido, la futura pérdida de salarios dejados de percibir y lucro cesante, así como costas, gastos y honorarios de abogado.

El 17 de mayo de 2021, St. Regis presentó su *Contestación a la Demanda* en la cual negó las alegaciones de los demandantes y levantó la defensa de que el despido de la señora Cabiya Rodríguez, al igual que el despido de 81 empleados adicionales, fue justificado al formar parte de una reorganización llevada a cabo en St. Regis como resultado de los efectos económicos repentinos y sin precedentes de la pandemia del COVID-19. Sostuvo que la señora Cabiya Rodríguez era la única en ocupar la posición de *Housekeeping Manager* y que su puesto nunca había sido reemplazado. Destacó que siguieron el criterio de antigüedad dentro de la clasificación ocupacional de la señora Cabiya Rodríguez, tal

KLCE202400707                                                          4

como dispone la Ley Núm. 80, *supra*. Por lo anterior, enfatizó la inexistencia de un nexo causal entre los daños alegados por la señora Cabiya Rodríguez y las alegadas actuaciones de St. Regis.

Superadas las etapas iniciales del litigio y múltiples incidencias que resultan innecesarias pormenorizar, el 7 de junio de 2023, St. Regis presentó una *Moción en Solicitud de Sentencia Sumaria*. Junto a su solicitud, presentó un escrito intitulado *Relación de Hechos Incontrovertidos en Apoyo a Moción en Solicitud de Sentencia Sumaria* en el cual propuso 303 hechos incontrovertidos en párrafos enumerados, y el derecho aplicable con el propósito de procurar la desestimación de la demanda instada en su contra. En esencia, sostuvo que la señora Cabiya Rodríguez comenzó a trabajar como empleada nueva para St. Regis el 5 de noviembre de 2018 en la posición de *Housekeeping Manager* con un periodo probatorio de nueve meses. Destacó que como parte de los procesos como nueva empleada, le fue entregada documentación sobre sus deberes, "briefings" del hotel, reglas, normas y procedimientos de la compañía, así como el Manual de Empleados. Además, manifestó que la señora Cabiya Rodríguez comenzó a trabajar en el hotel The Ritz Carlton en San Juan, el cual era operado por Luxury Hotels International of Puerto Rico, hasta septiembre de 2017, cuando Ritz Carlton cesó operaciones luego del paso del huracán María. Afirmó que el task force de Luxury Hotels asignó a la señora Cabiya Rodríguez en los Estados Unidos, siendo ella todavía empleada del mismo patrono, quien continuó pagando su salario, hasta marzo de 2018, fecha en que comenzó a trabajar para W South Beach en Miami, hotel operado por Marriot International Adminitration Services, Inc. Alegó que posteriormente, firmó un contrato de empleo probatorio con Sheraton Puerto Rico Management, LLC.

Añadió que como parte del proceso de reorganización de St. Regis, fueron eliminados 82 puestos, incluyendo el de *Housekeeping Manager*. Puntualizó que el puesto no fue reemplazado, y que sus deberes fueron asignados a la Directora del Departamento de *Housekeeping*. Asimismo, expuso que la señora Cabiya Rodríguez estaba embarazada cuando se hizo efectivo su despido, pero que ello no implicaba un despido injustificado o con ánimo discriminatorio, puesto que cuando se comenzaron a tomar decisiones en aras de atender el impacto de la crisis del COVID-19, a saber, el día que se le notificó el cambio de estado de empleo a "furlough", ella misma desconocía de su embarazo. Aseveró que la señora Cabiya Rodríguez fue despedida por justa causa de conformidad con las disposiciones de la Ley Núm. 80, *supra*, y que no fue víctima de discrimen alguno. Finalmente, argumentó que la señora Cabiya Rodríguez no pudo cumplir con el peso de prueba requerido para probar sus alegaciones, por lo que procedía disponer del caso por la vía sumaria.

El 15 de agosto de 2023, los recurridos presentaron su *Oposición de los Demandantes a Moción de la Demandada Solicitando que se dicte Sentencia Sumaria Total a su favor*, en la cual enumeraron hechos que a su consideración no estaban en controversia. Expusieron que la solicitud presentada por St. Regis no cumplió con la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. III, R. 36.3, toda vez que presentaron un listado de 303 aseveraciones que no eran esenciales y pertinentes sobre las cuales, en su mayoría, no hay controversia sustancial en el caso. Arguyeron que la causa de acción contiene elementos subjetivos de intención que conllevan determinar la credibilidad de las partes. Enfatizaron que St. Regis no produjo, durante el descubrimiento de prueba, prueba documental alguna comprobando la situación económica precaria que supuestamente le produjo el COVID-19, y solo hacían

alegaciones generales respecto a la condición precaria económica de la que fueron objeto. A su entender, existen las siguientes controversias que impiden la adjudicación de la reclamación por la vía sumaria, a saber:

1. Si el Hotel cerró operaciones completamente como consecuencia de la pandemia COVID-19 o si solo mermó brevemente la ocupación por parte de sus huéspedes, y poco tiempo después (meses) volvió a la ocupación de sus huéspedes tal y como la había tenido antes de la pandemia del COVID-19.

2. Si St. Regis puso en marcha un plan "verbal" de reorganización *bona fide* como consecuencia de la situación económica provocada por la baja en ventas, ocupación de huéspedes o ganancias que creó la Pandemia del COVID-19 que lo llevó obligatoriamente a tomar medidas necesarias para limitar los gastos, tales como disminuir la plantilla laboral, o ello no fue un mero pretexto para el despido discriminatorio por estado de embarazo y sexo de que fue objeto Cabiya.

3. Si el Hotel, *de facto*, tuvo una merma en ventas, ocupación de huéspedes o ganancias como consecuencia de la pandemia del COVID-19.

4. Si Cabiya llevaba 12 años trabajando para la Cadena Marriot, de la cual es subsidiaria el Hotel, y, consecuentemente, tenía más antigüedad que la gran mayoría de los empleados que dicha hospedería cesanteó como consecuencia de la pandemia del COVID-19.

5. Si el Hotel no le requirió a Cabiya que regresara a su trabajo porque eliminó las tareas que Cabiya desempeñaba en su puesto de Housekeeping Manager, o ello constituyó un pretexto porque según el propio Hotel todas las funciones de Cabiya las lleva a cabo la superiora inmediata de ella, Martínez.

6. Si el Hotel no le pidió a Johanna que regresara a trabajar porque actuó injustificadamente en contravención a la Ley-80, *supra*, o, su discriminó contra ella por razones de sexo y embarazo en contravención a las disposiciones de la Ley-3 de Madres Obreras y la Ley-100, *supra*.

7. Si es procedente en derecho que se imponga al Hotel el pago a favor de Cabiya de daños emocionales consistentes en las significativas angustias y sufrimientos mentales, depresión severa, nerviosismo y tensión padecidos por Cabiya.

8. Si es procedente en derecho que se imponga al Hotel el pago a favor de la perdida de salarios dejados de percibir y lucro cesante equivalente a la cantidad ganada si Cabiya ha sufrido y continuará sufriendo

hasta el día que pueda volver a emplearse o se dicte sentencia a su favor y después por un periodo razonable.

9. Si es procedente en derecho que se le imponga al Hotel el pago de una suma igual por penalidad sobre las sumas que adjudique bajo los párrafos (5) y (6) inmediatamente anteriores según dispone la Ley-100, *supra.*

10. Si es procedente en derecho que se le imponga el pago al Hotel a favor de Rodríguez por los daños y perjuicios que él ha sufrido como consecuencia de los actos culposos del Hotel.

El 16 de octubre de 2023, St. Regis presentó una *Réplica a Oposición a Moción de Sentencia Sumaria*, en la que planteó, entre otras cosas, que la oposición de los recurridos se fundamentaba en preceptos legales erróneos e inaplicables. Además, reiteró que no existía controversia sobre los hechos materiales de la reclamación. Finalmente, expuso que la causa de acción no involucra elementos de intención, y que procedía se dictara sentencia sumaria, puesto que no controvirtieron los hechos materiales propuestos en apoyo a su solicitud de sentencia sumaria. En respuesta, los recurridos presentaron *Dúplica de los Demandantes a Réplica de la Demandada a Oposición de los Primeros a que se dicte Sentencia Sumaria Total a favor de la Demandada* en la cual reiteraron lo expuesto en su oposición a la sentencia sumaria.

Luego de evaluadas las comparecencias de las partes y sus respectivos anejos, el 22 de abril de 2024, el TPI emitió *Resolución* en la cual consignó 112 hechos incontrovertidos y los siguientes hechos en controversia:

1. ¿Cuántos años en total trabajó la señora Cabiya para la Cadena Marriot y si la presunta antigüedad fue honrada y reconocida por St. Regis?

2. Si la señora Cabiya pasó por un periodo probatorio cuando comenzó a trabajar para St. Regis.

3. Si la señora Cabiya al momento de comenzar su empleo con St. Regis era una transferencia o una nueva contratación.

4. Si la señora Cabiya en su salario recibía algún tipo de beneficio o bonificación que honraba su alegada antigüedad con el patrono.

5. Si la Cadena Marriot International es el patrono principal de la señora Cabiya.

6. Si St. Regis tiene una política preparada por ellos que prohíbe el discrimen, hostigamiento y la conducta antiética en contra de sus empleados.

7. Si St. Regis cumple con su política en contra del discrimen por sexo y embarazo.

8. Si St. Regis pertenece o es subsidiaria de La cadena Marriot International.

9. Si la pandemia del COVID-1 9 afectó las operaciones y la situación económica de la parte demandada.

10. Si el COVID-19 fue una de las razones para cambiar a "furlough" el estado de empleo de la señora Cabiya e implantar su plan de reorganización.

11. Si la terminación de empleo sufrida por la señora Cabiya fue por motivos discriminatorios dado a su estado de embarazo y su género o si fue por justa causa debido a una presunta reorganización económica de la empresa en el departamento de "housekeeping".

12. Si la alegada angustia mental sufrida por la señora Cabiya fueron causadas por situaciones personales previas a la cesantía incluyendo su embarazo o si fueron ocasionadas por la acción de despido por parte de St. Regis en medio del estado de gestación de la codemandante.

13. Si los gerenciales de St. Regis emitían comentarios discriminatorios de corte machista hacia la demandada.

14. Si St. Regis utilizó el embarazo en otras empleadas como criterio para despedirlas a ellas.

15. La forma en que se aplicó las cesantías a otros empleados.

16. Si durante el tiempo que la señora Cabiya trabajó para St. Regis sufrió algún acto, incidente o patrón de alegado discrimen por su embarazo o su género que afectó su ambiente de trabajo.

17. Si St. Regis verdaderamente tenía un plan de reorganización económica, si dicho plan estaba por escrito y en qué consistía el mismo.

18. Si la señora Cabiya tenía más antigüedad que otros empleados que la demandada no despidió y ejercieron las funciones de la demandante luego de su despido.

19. Si el señor Rodríguez y el señor Díez ejercen también las funciones del puesto que tenía la señora Cabiya al momento de su despido.

20. Si las funciones de un Assistant Housekeeping Manager en la práctica son similares al puesto de Housekeeping Manager.

21. Si la aparente angustia mental del codemandante, el Sr. Rodríguez era a causa principalmente de eventos personales previos al despido de su esposa, la señora Cabiya o aparecieron luego de la cesantía.

22. Si al momento en que la parte demandada comienza a ejecutar acciones administrativas en torno al puesto de trabajo de la señora Cabiya, esta conocía de su estado de embarazo y por ende su patrono también.

23. ¿Cuál es el diagnóstico médico en torno a la salud mental de la señora Cabiya?

24. ¿Cuáles son los factores que han contribuido a su presunto estado mental y emocional?

25. Los daños, si algunos.

26. La mesada, si alguna.

27. La responsabilidad de las partes, si alguna.

Basado en lo anterior, el TPI emitió el dictamen recurrido, mediante el cual declaró *No Ha Lugar* la *Moción en Solicitud de Sentencia Sumaria* interpuesta por St. Regis y ordenó la continuación de los procedimientos.

En desacuerdo con la determinación del foro primario, el 7 de mayo de 2024, St. Regis presentó una *Moción de Reconsideración de Resolución Denegando Moción de Sentencia Sumaria*. Reiteró que los recurridos fundamentaron su oposición en preceptos legales erróneos e inaplicables, y que los hechos propuestos no fueron controvertidos. Añadió que algunas de las controversias identificadas por el TPI eran inmateriales al asunto del despido injustificado o discriminatorio, toda vez que existían determinaciones de hechos y evidencia admisible no controvertida que refutaban las mismas. El 23 de mayo de 2024, los recurridos presentaron *Oposición de los Demandantes a Moción de*

*Reconsideración de la Demanda en cuanto a la Resolución del Tribunal denegando la Moción de Sentencia Sumaria Total a favor de dicha demandada* reiterando lo expuesto en sus anteriores comparecencias. El foro primario declaró *No Ha Lugar* la solicitud de reconsideración presentada por St. Regis, mediante *Resolución* emitida el 28 de mayo de 2024.

Inconforme, St. Regis acudió ante esta Curia el 27 de junio de 2024 y señaló que el TPI cometió los siguientes errores:

> Erró el TPI al concluir que había controversias de hechos que impiden la MSS cuando dichas controversias no existen, son inmateriales o son controversias de derecho.

> Erró el TPI al denegar la MSS en relación a la reclamación de despido injustificado.

> Erró el TPI al denegar la MSS en relación a la reclamación de discrimen.

> Erró el TPI al denegar la MSS en relación a la reclamacion del co-demandante King Richard Rodríguez.

El 21 de agosto de 2024, los recurridos presentaron su *Memorando en Oposición a Certiorari*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *León v. Rest. El Tropical,* 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Caribbean Orthopedics v.*

*Medshape, et al.*, 207 DPR 994 (2021); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019).[3]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[3] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra.*

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

**B.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[4] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y

---

[4] Véase, además: *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros,* 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión,* supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas,* supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot,* 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y

aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas,* supra, pág. 119.

### C.

La Ley Núm. 80, *supra*, se adoptó en protección del obrero que ha sido privado injustificadamente de su trabajo, sin la oportunidad de recibir una indemnización para suplir sus necesidades básicas. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022). A esos efectos, la Ley Núm. 80, *supra*, le impone al patrono el pago de una indemnización o mesada, a favor de aquel empleado que es despedido, sin justa causa. *Íd.*

Sobre lo que constituye justa causa para el despido, el Artículo 2 de la Ley Núm. 80, 29 LPRA sec. 185b, enumera varias

circunstancias que afectan el buen y normal funcionamiento de una empresa, a saber:

> Se entenderá por justa causa para el despido de un establecimiento:
> (a) [...]
> (b) [...]
> (c) [...]
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
> (e) **Los cambios tecnológicos o de reorganización**, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
> (f) **Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento**.
> (Énfasis nuestro).

Sin embargo, esas seis (6) instancias son sólo ejemplos de escenarios que pueden considerarse justa causa para el despido. *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 930 (2015). La Ley Núm. 80, *supra,* no pretende ni puede considerar "la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia." *Íd.* Por tanto, "los patronos están en libertad de adoptar los reglamentos y las normas razonables que estimen necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción. *Íd.* Cónsono con lo anterior, un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a incrementar las ganancias del negocio, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya

existentes para así poder enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide. SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414 (2013).

En cualquier caso, en que se despidiesen empleados o empleadas por las razones indicadas en los incisos (d), (e) y (f) del Artículo 2 de la ley antes citada, el patrono estará obligado a retener con preferencia en el empleo a los empleados o empleadas de más antigüedad. Respecto a lo antes el Artículo 3 de la Ley Núm. 80, 29 LPRA sec. 185c establece lo siguiente:

> En cualquier caso en que se despidiesen empleados o empleadas por las razones indicadas en los incisos (d), (e) y (f) de la sec. 185b de este título, el patrono estará obligado a retener con preferencia **en el empleo a los empleados o empleadas de más antigüedad**, siempre que subsistan puestos vacantes u ocupados por empleados o empleadas de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos(as), entendiéndose que se dará preferencia a los empleados o empleadas despedidos(as) en caso de que dentro de los seis (6) meses siguientes a su cesantía tuviere necesidad de emplear a una persona en labores iguales o similares a las que desempeñaban dichos empleados o empleadas al momento de su despido y dentro de su clasificación ocupacional, siguiéndose también el orden de antigüedad en la reposición excepto, y en ambas situaciones, en aquellos casos en que haya una diferencia razonablemente clara o evidente en favor de la capacidad, competencia, productividad, desempeño , eficiencia o historial de los(as) empleados(as) comparados, en cuyo caso el patrono podrá seleccionar a base de dichos criterios. Disponiéndose, que:
>
> > (a) En el caso de despidos o reducciones de personal por las razones contempladas en los incisos (d), (e) y (f) de la sec. 185b de este título en empresas que tienen varias oficinas, fábricas, sucursales o plantas, y en las que la práctica es que usual y regularmente los empleados o empleadas de una oficina, fábrica, sucursal o planta no se trasladan a otra, y que dichas unidades operan sustancialmente de forma independiente en cuanto a los aspectos de personal, la antigüedad de los empleados o empleadas dentro de la clasificación ocupacional objeto de la reducción de personal, se computará tomando en cuenta únicamente los empleados o empleadas en la oficina, fábrica, sucursal o planta en la cual se va a hacer dicha reducción de personal.

        (b) En el caso de empresas con varias oficinas, fábricas, sucursales o plantas en las cuales existe la práctica usual y regular de que sus empleados o empleadas se trasladan de una unidad a otra y que las distintas unidades operan de forma sustancialmente integrada en cuanto a los aspectos de personal, la antigüedad se computará a base de todos los empleados o empleadas de la empresa, o sea, tomando en consideración todas sus oficinas, fábricas, sucursales o plantas, que están en la clasificación ocupacional objeto de la reducción de personal.

El Tribunal Supremo de Puerto Rico ha establecido los factores a considerar al momento de surgir controversias con relación a clasificaciones ocupacionales en que se desempeña un empleado, a saber: (i) las funciones y los deberes del puesto; (ii) los requisitos para ocupar la plaza, incluyendo los conocimientos y las destrezas necesarias, así como la preparación académica; (iii) forma de compensación y (iv) forma en que se realiza el trabajo. *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 371 (nota núm. 12).

Por otro lado, nuestro Tribunal Supremo dispuso en *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 985, que cuando se trata de un despido de un empleado como parte de una reorganización empresarial, según dispone el Art. 2 de la Ley Núm. 80, es necesario que tal reorganización sea *bona fide*, es decir que no sea producto del mero capricho del patrono, sino de las consideraciones relacionadas al manejo de la empresa. No obstante, para que el patrono pueda justificar el despido al amparo del inciso (e) – por reorganización – debe presentar "evidencia acreditativa del plan de reorganización implantado, así como su utilidad". Para ello, el juzgador de los hechos puede otorgarle valor probatorio a las declaraciones juradas presentadas, como a los testimonios vertidos mediante deposiciones y **la prueba documental** que las partes acompañan al someter una moción de sentencia sumaria. (Énfasis nuestro). *Íd.*, pág. 1003.

**D.**

La Ley Núm. 100, *supra,* prohíbe a un patrono despedir, limitar o discriminar a un empleado suyo por razón de edad, raza, color, sexo, entre otras. *Segarra Rivera v. Int'l Shipping et al.,* supra. A esos efectos, la Ley Núm. 100, *supra,* establece una causa de acción civil por daños a favor de aquella persona que fue despedida o se vio afectada en su empleo por razón de su edad, raza, color, religión, origen o condición social. *Íd.*

Para activar la presunción de discrimen (caso *prima facie*) el empleado demandante tiene que probar tres elementos: (1) que hubo un despido o acción perjudicial; (2) que éste se realizó sin justa causa; (3) presentar evidencia indicativa de la modalidad de discrimen que se vincula al despido. Es en ese momento que se activa la presunción. Ciertamente, estas circunstancias o hechos básicos varían dependiendo del contexto en que se dé la decisión de empleo y a base del tipo o modalidad de discrimen que se esté alegando. Con la presentación de prueba a tales efectos, se establecen los hechos básicos que dan lugar a la presunción. Es menester advertir que el empleado no tiene que probar todos y cada uno de los elementos, ya que, de así requerírsele, se le estaría exigiendo que cumpla con una obligación procesal que no le corresponde llevar a cabo al instar su reclamacion por discrimen. *Segarra Rivera v. Int'l Shipping et al.*, supra, a las págs. 987-989; *Díaz v. Wyndham Hotel Corp.*, a las págs. 384, 390 citando a *S.L.G. Hernández-Beltrán v. TOLIC*, 151 DPR 755 (2020). [Citas omitidas].

**E.**

La Ley Núm. 3, *supra,* tiene el propósito de proteger la salud y vida de las mujeres obreras en estado de embarazo. *Santiago v.*

*Oriental Bank & Trust,* 157 DPR 250, 259 (2002).[5] Este estatuto proscribe el discrimen por razón de embarazo, modalidad del discrimen por razón de sexo, y otorga a la empleada víctima de dicha conducta una causa de acción por daños contra su patrono. *Maldonado v. Russe, supra.* Además, procura salvaguardar los derechos de las empleadas en estado de gestación, aun durante el periodo probatorio, mediante el establecimiento de periodos de descanso antes y después del alumbramiento. Dicho norte también se alcanza por medio de la prohibición del despido sin justa causa, la suspensión, reducción de salario o discrimen de cualquier otra índole contra la empleada debido a la merma en la producción por causa de su estado de embarazo. *Santiago v. Oriental Bank & Trust, supra,* a la pág. 256.

La Ley Núm. 3, *supra,* provee una partida para compensar los haberes dejados de percibir, estos son los ingresos no percibidos desde la fecha del despido hasta la fecha de la sentencia y mejor conocido como paga atrasada. *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 817, 818 (2009).

En lo pertinente al caso de autos, la sección 4 de la Ley Núm. 3, *supra,* 29 LPRA sec. 469, dispone que:

> El patrono no podrá, sin justa causa, despedir a la mujer embarazada o que adopte a un menor a tenor con la legislación y procedimientos legales vigentes en Puerto Rico o en cualquier jurisdicción de los Estados Unidos de América. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo.
>
> (a) Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo o rehúse restituirla en su trabajo luego del alumbramiento o adopción de un menor a tenor con la legislación y procedimientos legales vigentes en Puerto Rico o cualquier jurisdicción de los Estados Unidos de América, incurrirá en

---

[5] Esta ley forma parte de un esquema trazado por el Estado para proveer a la mujer embarazada una garantía mayor contra el discrimen en el trabajo por razón de sexo. *Maldonado v. Russe,* 153 DPR 342, 348 (2001).

> responsabilidad civil por una suma igual al doble del importe de los daños causados a la trabajadora, o por una suma no menor de mil (1,000) dólares ni mayor de cinco mil (5,000) dólares a discreción del Tribunal si no se pudieran determinar daños pecuniarios o el doble de éstos, si montaran a una suma menor de mil (1,000) dólares. La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los establecidos en esta Sección. En todo caso de despido a una mujer embarazada se presume que la acción del patrono fue injustificada. El patrono deberá presentar suficiente prueba para rebatir la presunción.

La causa de acción que surge en virtud de dicha ley prohíbe el despido de una mujer en estado de embarazo. La misma ley dispone que el patrono tiene el deber de garantizar el puesto de la empleada durante su licencia por maternidad. *Íd.* También elimina como justa causa el menor rendimiento para el trabajo por causa del embarazo.

**F.**

Ante la realidad de que las mujeres forman parte integral de la fuerza laboral de Puerto Rico y que, lamentablemente, éstas siguen siendo objeto de discrimen en dicha área, existen varias piezas legislativas cuyo propósito es erradicar esta indeseable práctica a tenor con el principio constitucional que establece que la dignidad del ser humano es inviolable y que todas las personas son iguales ante la ley. Art. II, sección 1, Constitución del Estado Libre Asociado. Entre ellas se encuentra la Ley Núm. 69 del 6 de julio de 1985, según enmendada, mejor conocida como la Ley para Garantizar la Igualdad de Derecho al Empleo, 29 LPRA sec. 1321 et seq., cuyo propósito es garantizar la igualdad de derecho al empleo tanto del hombre como de la mujer, prohibiendo las actuaciones de los que promueven el discrimen, fijando responsabilidades e imponiendo penalidades. *Íd.* Como sugiere su título, este estatuto establece como práctica ilegal el que un patrono:

(1) Cuando por razón de su sexo, suspenda, rehúse emplear o despida cualquier persona, o que de cualquier otra forma discrimine contra una persona, con respecto a su compensación, términos o condiciones de empleo.

(2) Cuando por razón de su sexo limite, divida o clasifique sus empleados o a las personas que soliciten para un empleo, en cualquier forma que la pueda privar o tienda a privar a esa persona de una oportunidad de empleo o que de cualquier otra forma le pueda afectar adversamente su condición como empleado. 29 LPRA sec. 1323.

Toda persona o patrono que viole alguna disposición de la Ley Núm. 69, *supra*, podrá incurrir en responsabilidad civil y criminal. *Íd.*, 29 LPRA sec. 1341. Ahora bien, por tratarse de una legislación más específica, nuestro Tribunal Supremo ha establecido que "las disposiciones de la Ley Núm. 69, *supra*, prevalecen sobre las provistas en la Ley Núm. 100, *supra*, respecto a la prohibición del discrimen por razón de sexo en el ámbito laboral". *López Fantauzzi v. 100% Natural*, supra, págs. 125-126.

**III.**

En sus señalamientos de error, St. Regis cuestiona la *Resolución* emitida por el TPI, por entender que, el foro *a quo* incidió al no acoger la solicitud de sentencia sumaria presentada y determinar que aún existen controversias de hechos que debían dilucidarse en un juicio plenario. Sostiene que, el foro primario adoptó como incontrovertidos más de 100 hechos fundamentados en los escritos de las partes, que la mayoría versan sobre asuntos que no son pertinentes para determinar si hubo un despido injustificado o discriminatorio en contra de la señora Cabiya Rodríguez. En su escrito, expone hechos específicos adoptados por el TPI en su *Resolución*, que por sí solos dispondrían del caso de manera sumaria. Destaca que los 23 hechos controvertidos que determinó el foro primario para no declarar sentencia sumaria a su favor, una vez analizados, no existen, ya que pueden ser contestados con las mismas determinaciones incontrovertidas. Así mismo, alega

que sí hubo justa causa para el despido de la señora Cabiya Rodríguez, y que no fue discriminada, toda vez que su despido fue parte de una reorganización *bona fide* como consecuencia de los daños económicos sufridos por el COVID-19 en Puerto Rico, en la industria hotelera. Además, arguye que la señora Cabiya Rodríguez intenta utilizar el tiempo que laboró para otros patronos, es decir, Luxury Hotels International of Puerto Rico y Marriot PR Management Corporation, para propósitos de su antigüedad bajo la Ley Núm. 80, pero que ello es improcedente toda vez que no son el mismo patrono y son corporaciones subsidiarias independientes de otras compañías que operan otras marcas del porfolio de Marriot International. En cuanto a las alegaciones de la señora Cabiya referentes al reconocimiento que se le hizo por 10 años de trabajo, St. Regis asegura que, para ciertos propósitos de algunos beneficios internos, se reconoce el tiempo trabajado con otros patronos pero que ello es irrelevante para propósitos de calcular la antigüedad bajo la Ley Núm. 80, *supra,* al momento de llevar a cabo una reorganización o reducción de personal. Por todo lo anterior, St. Regis solicita se disponga del caso por la vía sumaria.

Por su parte, los recurridos alegan que al momento de la señora Cabiya Rodríguez ser despedida del hotel St. Regis, esta contaba con doce años y siete meses de antigüedad con la cadena de Marriot International, del cual reiteran St. Regis es parte. Para ello, presentaron como evidencia, por ejemplo, (1) el sistema ADP de nómina de empleados con fecha de "*Hire Date*" del 7 de febrero de 2008; (2) un documento con la acumulación de vacaciones y licencias por enfermedad extra desde el primer día de empleo; (3) la cubierta de plan médico desde el primer día de empleo; entre otros. Reiteran que las funciones que realizaba la señora Cabiya Rodríguez como *Housekeeping Manager* fueron reemplazadas por dos empleados que tenían la misma clasificación ocupacional, por lo que

el puesto no fue eliminado, sino que solo se eliminó el nombre para esconder el ánimo discriminatorio de su despido. Además, sostienen que St. Regis discriminó contra la señora Cabiya Rodríguez por su estado de embarazo al momento del despido, y que ello le causó severos daños emocionales y pecuniarios. Enfatizan que St. Regis tampoco produjo evidencia documental durante el descubrimiento de prueba, que demostrara la situación económica precaria que les produjo el COVID-19, a los fines de comprobar que el despido fue justificado como parte de una reorganización de la corporación.

Evaluados tanto el expediente ante nuestra consideración, como la *Resolución* recurrida y los planteamientos de error, determinamos que no existe ningún impedimento procesal que nos impida atender los méritos de este recurso. Tratándose de la denegatoria de una moción de carácter dispositivo, estamos facultados, conforme a lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra,* para revisar esta determinación mediante el recurso de *certiorari.* Además, por tratarse de la revisión de una solicitud para que se dicte sentencia sumaria a favor del patrono peticionario, lo que dispondría del caso por completo, estamos también facultados, aunque el caso sea tramitado por la vía sumaria para intervenir conforme a lo establecido en *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723 (2016), y *Dávila Rivera v. Antilles Shipping, Inc.,* 147 DPR 482 (1999).

Así las cosas, y examinadas de novo la solicitud de sentencia sumaria y su oposición, acogemos las determinaciones de hechos formuladas por el TPI en el dictamen recurrido por entender que están debidamente sustentadas y concluimos que el foro primario actuó correctamente al resolver que en este caso existen hechos materiales en controversia que impiden la resolución sumaria de ciertas causas de acción presentadas en la demanda y concluimos que otras deben ser desestimadas.

A nuestro parecer, del expediente presentado no surge que en la solicitud de sentencia sumaria y en la oposición se haya presentado evidencia suficiente para que el foro primario pueda determinar toda la verdad de los hechos. Además, las controversias que presenta este caso contienen en su mayoría elementos subjetivos, en los que el factor de credibilidad juega un papel esencial y decisivo. En específico, subsisten las siguientes controversias: la existencia del plan de reorganización del hotel St. Regis; si se cumplió con el requisito que dispone la Ley Núm. 80, *supra*, de retener al empleado con más antigüedad; si Sheraton Puerto Rico Management h/n/c St. Regis Bahía Beach es parte de Marriot International o es una corporación subsidiaria independiente; el tiempo de trabajo de la señora Cabiya Rodríguez a los efectos de determinar su antigüedad; si las funciones del *Housekeeping Manager* son las mismas que el *Assistant Housekeeping Manager*; y si las funciones que realizaba la señora Cabiya Rodríguez fueron asignadas a otros empleados de la misma clasificación. Por tal razón, consideramos que el mecanismo extraordinario y discrecional de la sentencia sumaria no es el apropiado para dilucidar estas controversias.

Por lo antes, en el caso de marras, luego de una ponderada y sosegada revisión *de novo* de la solicitud de sentencia sumaria y su oposición, no albergamos duda de que la causa de acción al amparo de la Ley Núm. 80, *supra*, debe dilucidarse en un juicio plenario donde se presente evidencia pertinente a los hechos y el foro primario determine si se cumplió con los criterios para reclamar una causa bajo dicha Ley.

De otro lado, en su tercer señalamiento de error, la señora Cabiya Rodríguez alega que fue discriminada por razón de su embarazo, según lo proscribe la Ley Núm. 100, *supra*, y la Ley Núm. 3, *supra*. No le asiste la razón. Cuando un empleado insta una causa

de acción por discrimen por razón de sexo al amparo de la Ley Núm. 100, *supra* y la Ley Núm. 69, *supra,* surge una presunción de discrimen contra el patrono una vez el empleado establezca en la vista probatoria un caso *prima facie* por la modalidad de discrimen alegada. *López Fantauzzi v. 100% Natural,* 181 DPR 92, 124 (2011). Según mencionado, los siguientes elementos deben cumplirse al alegar discrimen contra un patrono: (1) que hubo un despido o acción perjudicial; (2) que éste se realizó sin justa causa; (3) **presentar evidencia indicativa de la modalidad de discrimen que se vincula al despido**. (Énfasis nuestro). Una vez tal presunción se activa, el patrono puede rebatirla probando que hubo justa causa para el despido o que el despido fue por motivos no discriminatorios, o articulando ambas defensas a la vez. De rebatir la presunción, el empleado podrá presentar prueba demostrativa de la existencia del discrimen alegado, pero sin el beneficio de la presunción indicada. *Íd.,* pág. 131.

A su vez, la Ley Núm. 3, *supra*, protege a toda madre obrera al prohibir el discrimen por razón de embarazo, el cual representa una modalidad del discrimen por razón de sexo. En *López Fantauzzi v. 100% Natural,* supra, pág. 132, el Tribunal Supremo de Puerto Rico analizó la referida Ley y estableció que una vez una empleada embarazada es despedida de su empleo durante su estado de gestación, tal hecho base, de por sí, configura una presunción de despido discriminatorio por razón de embarazo. Para rebatir dicha presunción, el patrono está obligado a demostrar que hubo justa causa para la acción adversa tomada contra la empleada en condición de preñez. De igual manera, en *Santiago v. Oriental Bank & Trust*, supra, nuestro Más Alto Foro dispuso que el patrono también puede levantar como defensa afirmativa el hecho de que desconocía del embarazo de la empleada al momento del despido.

Por consiguiente, en cuanto a las restantes causas de acción al amparo de la Ley Núm. 100, *supra,* la Ley Núm. 69, *supra,* y la Ley Núm. 3, *supra,* colegimos en que deben ser desestimadas, toda vez que el mismo no obedeció a razones discriminatorias por razón de sexo y embarazo, tal y como alegó la señora Cabiya Rodríguez en su demanda. Si bien no descartamos tal escenario, correspondía a la señora Cabiya Rodríguez establecer su caso *prima facie* y no lo hizo. De la prueba presentada, ésta no logró establecer las bases para una reclamación conforme disponen las leyes concernidas, pues no ofreció evidencia adicional que colocara al juzgador de los hechos en posición de concluir que, en efecto, hubo discrimen por razón de sexo según lo proscribe la Ley Núm. 100, *supra* y la Ley Núm. 69, *supra. López Fantauzzi v. 100% Natural,* supra, pág. 133. Es decir, que ésta no logró probar sus alegaciones de discrimen por embarazo y por sexo, toda vez que la prueba que obra en el expediente, a nuestra consideración, es insuficiente para prevalecer en las causas de acción al amparo de las mencionadas leyes. Por tanto, procede su desestimación.[6]

**IV.**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* solicitado y se confirma la *Resolución* recurrida en cuanto a la causa de acción al amparo de la Ley Núm. 80, *supra,* así como la de daños y perjuicios. En consecuencia, procede la celebración de un juicio en su fondo sobre estos asuntos. Por otra parte, se desestiman las causas de acción al amparo de la Ley Núm. 100, *supra,* la Ley Núm. 69, *supra,* y la Ley Núm. 3, *supra.*

---

[6] Según surge del expediente, la prueba presentada por la señora Cabiya Rodríguez en la *Oposición de los Demandantes a Moción de la Demandada Solicitando que se dicte Sentencia Sumaria total a su favor* para probar el alegado discrimen por sexo y embarazo consistió en: (1) Orden Médica de la Clínica APS, (2) Carta del Alta del Hospital San Juan Capestrano, (3) Folletos de Plan de Seguridad ante el Riesgo Suicida, (4) Notas médicas psiquiátricas – INSPIRA, (5) Fotografías de los medicamentos de la señora Cabiya Rodríguez, (6) Laboratorios, (7) Deposición de la señora Cabiya Rodríguez, (8) Deposición del señor Rodríguez Villegas, (9) Deposición del señor Woollis Lugo y (10) Deposición del señor Franceschini Carlo.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones